Before we begin our arguments this afternoon, for the record, Justice McDade is a fully participating member of this panel and is fully participating both in the oral argument and the recording as the benefit of the record and all the briefs, and will be in decision on this case with Justice O'Brien and myself, for the record. She just was unable to be here for the oral argument, physically present today. Justice O'Brien Good afternoon, Your Honors. May it please the Court, Counsel, representing the defendant in this case, Ricky Brownson. Ricky was convicted in a jury trial of three counts of aggravated criminal sexual assault and five counts of criminal sexual assault. Specifically, the jury found that in 2012 and or 2013, the defendant who was younger than 17, he was then 16 years old, had sexual relations with his three half-sisters who were younger than nine. They were eight years old. He received five prison terms totaling 38 years. Eight issues are raised on appeal. The first issue, the defendant maintains that he was not proved guilty of the charged offenses beyond a reasonable doubt. The only evidence against him in this case consisted of pretrial accusations made by his half-sisters. But they all testified at trial. They recanted those statements, claimed they were false, and that they were forced to make them by their older sister, Diamond. There was no physical evidence in the case, no third-party eyewitness testimony, and no incriminating statement by the defendant. Ricky Brownson, therefore, asks this Court in the first issue to reverse his convictions outright. Alternatively, in issues two and six, based on various errors that occurred at trial, he respectfully asks this Court to reverse and remand for a new argument in issue seven, which is a cumulative error argument based on the errors set forth in issues two through six. As a final alternative in issue eight, based on one act, one crime grounds, he asks Your Honors to vacate three of the criminal sexual assault convictions for which the judge imposed no sentence. In argument today, I'd like to discuss some of the new trial issues. Of course, if Your Honors have questions about the other issues, I'd be happy to address those as well. Issue two concerns a violation of Rule 431B, which of course is based on the Illinois Supreme Court's decision in People v. Zare. It requires the trial judge to advise prospective jurors during voir dire of four fundamental principles of law, and to ask prospective jurors whether they understand and accept those principles. In this case, the judge failed to mention the fourth principle, which is that the jury cannot consider in deciding the defendant's guilt or innocence the fact that he does not testify on his own behalf. And that was very important in this case because Ricky Brownson did not testify at his trial. In addition, the judge told the jury that defendant had to be proved guilty beyond a reasonable doubt, but she did not ask if the jurors accepted that principle. So there were clear violations of the rule in this case. Now, the issue was not preserved, so the defendant asked this court to find a plain error. The Illinois Supreme Court has held that Rule 431B violation can only be plain error where the evidence is closely balanced. That's not true. Okay. The evidence can only be plain error. It can only be reversible error. Reversible. Yes, plain error is that which is plain. So you've got to start with the analysis logically. Was it error? Thank you, Your Honor. Reversible as plain error. Reversible is the ultimate outcome of any error analysis. Correct. Correct. I would submit, Your Honors, that here it is reversible, should be found to be reversible, because the error was closely balanced. Again, the only evidence before... Well, the evidence was closely balanced. Yes. Because in a plain reversible error analysis, you can only have reversible error. First, you've got to have plain error. Correct. Because plain error means you didn't have to preserve it. Okay? Well, I would submit that... And that would be reversible, either structural, which they've closed that avenue. That's true. So now it's to be reversible only if the evidence is closely balanced. It's closely balanced. And the defendant submits it was close here, because again, the evidence was limited to the pretrial accusations made by the complainants. The evidence that could lead logically to a conviction. Correct. There was no other evidence presented at trial. There was no physical evidence that the incidents occurred, no incriminating statements by the defendant, no third-party eyewitness testimony. So testimony about the statements made prior to trial is what the state presented. Again, the complainants disavowed those statements at trial. Did Boozer testify? That was, yes, that was one of the witnesses who testified about the pretrial state. Okay, so we actually had testimony at trial for Boozer and Martis. And Martis, there was a police officer, there was a DCFS representative, there was the older sister, Diamond, and the Children Advocacy Center interviews, which were recorded. So we have videotaped testimony outside of the trial by the victims. Correct, correct. But again... With detail. With some amount of detail, but again, they all, the victims completely disavowed those statements. Oh, now, yeah, they recanted, they received it at trial. Right, so the jury had to weigh or decide which was truthful and which was false. The pretrial accusations, the trial testimony recantations. Everything, all of the evidence came from the mouths of the complaining witnesses. And so they were either telling the truth or they weren't telling the truth. And I would submit under those circumstances, that was a close question for the jury. It's a credibility question. Well, I'm really dealing with this. You have pretrial video statements by the victims. Well, it's all pretrial. But that's correct. Correct, correct. Yeah. Okay. And in weighing the process of what really is true, either the live testimony in front of the jury... Right. Or the statements, there was live testimony by Martis and Boozer, too. Oh, the statements. Of the statements. They had no firsthand knowledge, it's all statements. Correct. So it's statements versus statements. Right. Statements that happened versus statements that didn't happen. Yeah, but common sense, the jury's going to look at those statements actually from the mouths of the victim and then statements of the other two, even though they're pretrial. They have to look at it all. Of course. Of course. Okay. But the defendant submits where there's no corroborating evidence. I mean, it's all statements. Correct. From the same individuals. Right. Which is true, which is false. The defendant's position is that that's a close case, and therefore the clear violation of 431B is reversible as plain error. You say that you can't, the corroborating evidence, you say it needs to be some psychophysical evidence? Oh, well, of course we know that no corroborating evidence is necessary to sustain a conviction if the trier of fact accepts the testimony of one witness testifying for the prosecution, finds that testimony to be reliable, that can be enough to sustain a guilty verdict. What I'm saying here in terms of- That's your first issue. You said it wasn't. I'm sorry, Your Honor? Wasn't that your first issue on appeal? Well, the first issue is reasonable doubt, the sufficiency of the evidence. Okay. Okay. Well, what I'm saying is that- You're not conceding that. No. No, not at all. What I'm saying, the case law has all said that there is no particular quantum of evidence necessary to sustain a conviction. Obviously, some cases we have a lot of evidence, some cases we have a little bit of evidence. The Illinois case law says the testimony of one witness can be enough to sustain a conviction. What I'm saying here in terms of this issue, too, the 431B violation, was the evidence close or not? Because if the evidence is not close, the Supreme Court has told us the 431B violation cannot be reversible plain error. In looking at whether the evidence was close, I think you'd look at, well, what was the evidence? Was there corroborating evidence? And my point is there wasn't, and so that contributes to the argument that the evidence was close. I think Justice O'Brien said physical evidence, right? It's the nature of potential corroborating evidence. Potential, right, right. There was no potential corroborating statements. Repeated statements, but statements. That's what we have. Or physical evidence. In this case. No corroborating physical evidence, no corroborating confession by the defendant, no corroborating third person, I saw this happen or the defendant said this happened, whatever the case may be. Actually, I'm sorry, the older sister did say that the defendant said it happened. That was disputed. In issue 4, the defendant submits that he was denied a fair trial based on a violation of 725 ILCS 5-115-10. That statute allows the state in a sex offense prosecution involving a minor complainant to elicit testimony about the minor complainant's pretrial accusations as substantive evidence as long as the judge makes a finding prior to trial that those statements are reliable considering the timing, the circumstances, the contents of the statement. Does that require a separate hearing? It does require a hearing and a decision by the judge prior to trial. There was a hearing, a pretrial hearing in this case. Now, as we've discussed, and as honorees obviously know from the record, there were four types of evidence here. The police officer, the DCFS representative, the older sister, Diamond, and the CAC recorded interviews. At the pretrial hearing, however, the only evidence that was presented to the judge and therefore found reliable and admissible by the judge was the testimony of Diamond Brownson and the recordings of the CAC interviews. The state did not submit at that pretrial hearing either the testimony of the police officer or the DCFS representative, Boozer and Marcus, I believe were their names. They elicited the testimony at trial, but no pretrial hearing as to those two witnesses. Now, the State on Appeal argues, well, that evidence was admissible to impeach or rebut the trial testimony recantations. But frankly, the same could be said of Diamond's testimony and of the recorded CAC interviews. All of this evidence fell strictly within the parameters of 115-10. It's a myth that the state can't pick and choose. Well, some of it will present to the judge and ask for reliability. Okay. Your argument as well as maybe the state of the law. Okay. Testimony can be used to establish a fact, correct? Sure. Right. Sure. Okay. And testimony can be used to impeach prior to testimony of someone else. Correct. Okay. So you're saying the purpose for the testimony, whether it be to establish a fact or to impeach, in these types of cases have to be subject to a 115 determination, or is there an exclusion for it if it's used for impeachment? Well, what I'm saying is that any evidence of pretrial accusations made by the complaining witnesses in a sex offense prosecution involving a minor, in order to be introduced to substantive evidence, must first be a pretrial hearing where the judge finds them reliable and hence admissible. Now, things might have been different here had the jury ultimately been instructed, well, okay, this evidence was introduced substantively, this evidence for impeachment. I don't believe there was any distinction made in the instructions given to the jury here. And therefore, because the police abuser and martyrs, because their testimony consisted of the repetition of statements made by the complainants, not that, oh, they were impeached because, I don't know, for some different reason. It was just repeating the alleged statements, accusations that they had made to them, which is basically the same thing they said in the CAC interviews and the same thing they said to their sister, Diamond. And so there was really no distinction in the testimony, with respect to the three witnesses and the CAC. So 115, conceptually, okay, because we're getting the fear set here. That's the whole purpose of giving minors, and all of the policy that the legislatures and all of them come up with are these exceptions. Yes. Okay. You're saying that this testimony could have been taken as substandard testimony? I believe that is what 115.10 allows. Right. That's the reading of the statute. But it had been vetted under a 115 hearing, correct? Martis and Boozer? They were not vetted at a 115.10. Vetted. They should have been. But if it's used for impeachment, do you have still those criteria, reliable, et cetera? Well, at that point, if it's only impeachment, if that's the state's actual strategy, then I think it behooves the state to issue an instruction or tender an instruction to be given to the jury. In considering that testimony, that's only being considered for impeachment, as opposed to this other testimony that's being considered substantively. And, again, my recollection is there was no such instruction, limited instruction given in this case. Have you done any research that jurors can make that academic distinction? That's a good question. It's a very good question. I think it's difficult. I think it's difficult. The courts have said they can. In some cases, maybe they can. In some cases, they can't. But if you're here in any event, there was no distinguishing instruction to the jury. That's the error that the defendant cites here. Issue six on appeal concerns misstatements of the evidence and brief statements by the prosecutors, but I think very crucial statements by the prosecutors. There were two testimonial trials of two doctors who examined the physical examinations of the complainants after the complaints came to light. They testified the examinations were normal, no indications of abuse. However, in a closing argument, one of the prosecutors said, referring to the examination by one of the doctors, that it was consistent with what healing would look like. And the other prosecutor said in a rebuttal closing argument that that doctor said things happened and did say there was some physical evidence. The fact remains that the testimony of the doctors was consistent that the examinations were normal, no signs of abuse. Now, I would guess that in a case like this where the jury had to weigh the pretrial accusations against the trial testimony recantations, they would probably look to see is there corroboration for one or the other and what to hang their hat on that. These statements by the prosecutors, although brief, in closing arguments suggested that there was evidence corroborating the pretrial accusations when, in fact, there was not. And again, when it submits, the evidence was close and consequently this error also denied him a fair trial. And he also complains in Issue 4 about the fact that during jury deliberations the jury asked to see both the pretrial accusations, specifically the videotapes, and the trial testimony recantations, the transcripts. The judge called the jury in and said, okay, here's the videotape, and they saw the videotape. And she said, it's going to be a while for the transcripts to be prepared. Well, subsequently the jury sent a note back to the judge saying, you know, we don't really need those transcripts. And under those circumstances, again, the jury had to weigh the pretrial accusations against the trial testimony recantations. They got to see one during deliberations. They didn't get to see the other. That highlighted the evidence favorable to the state, and the defendant submits that that denied him a fair trial. The last thing I'll mention extremely briefly with respect to Issue 3 is the Confrontation Clause issues. Here the defendant was convicted based on pretrial accusations, pretrial statements with no corroboration. Yes, the girls did testify, and they were examined, and they said nothing happened. But the evidence in the case was pretrial accusations. That's what it was. And the defendant submits that that violates the Confrontation Clause. For these various reasons set forth in 2 through 6, and again in Issue 7, the defendant makes a cumulative error argument. So individually or cumulatively, respectfully ask Your Honors for a new trial in the event you don't reverse the convictions outright as pre-formed in Issue 1. Thank you. Counsel, you have time to reply. Thank you. Counsel, you may respond. May it please the Court. Counsel, my name is Jasmine Wharton. I represent the people of the state of Illinois in this matter. I'll be arguing off-brief. This brief was written by Laura DeMichael Bailon, who's no longer with our office. She's in the federal court now. So in this case, the defendant was proven guilty beyond a reasonable doubt of aggravated criminal sexual assault and criminal sexual assault. No reversible error was committed in this case. For the first issue, when it comes to reasonable doubt, the evidence presented was sufficient to convict the defendant. We have the victim-sensitive interviews, the CAC interviews, where each victim affirmed that sexual assaults happen in substantively admissible victim-sensitive interviews. The interviews were found to be reliable. When testimony was brought forth by Ms. Lindquist, she explained the format of the interviews, the report building, the anatomy identification, touch inquiry, abuse scenario, and closure. Those interviews showed all three triplets interviewed individually, identifying that they told their sister, Diamond, what happened to them. After Diamond inquired about noises she heard the night before, before falling asleep, coming from their room, she heard grunting noises. At first, the girls did not disclose what happened, but eventually they felt comfortable enough to tell their sister that their brother, the defendant, was in fact sexually assaulting them. During the interview, they also said that Diamond contacted their parents, and the parents contacted their pastor, Pastor Tate, who also testified in these proceedings. A meeting was had where the defendant admitted and apologized for abusing the girls. He was reprimanded. The pastor prayed with the defendant, but then the abuse continued. The victims described what the assaults felt like, the pain that they experienced. The interviews were so reliable and such credible evidence. Based on how the girls described the pain that they experienced, it didn't appear to be coached at all. It was clear that an assault had happened, and it was coming from an 8-year-old's point of view. It hurt like pepper. The defendant's genitalia was big, and it hurt. There was blood coming out of my behind after being assaulted by my brother, the defendant. The evidence that was revealed, or the testimony that was revealed during those interviews was not only damaging, it was extremely truthful and accurate coming from the girls, and each girl said that this is the truth as to what happened. But then when there's the recantation, and we have to look now at this 431B violation in terms of whether or not the evidence is closely balanced. All we have is the allegation that the three girls made to the sister, to the police officers in these VSIs, and that's where the testimony of everyone flows from, and then they have their recantations. So where do we find what would be corroborating to show that this is not one of those cases where it's closely balanced, where it's just a credibility? We either believe the story that they gave before the trial, or their story at trial. How can we find that? What is in this record that is corroborating evidence? So we have the testimony, or we have the victim-sensitive interviews, the video, we have Diamond's testimony that didn't necessarily visually see what was occurring, but she heard noises. And those noises, when she inquired about them, led her to find out that the children were being abused. So I would call that somewhat eyewitness testimony, or actually ear-listening testimony, as to what was going on, that something was awry. We also have a lot of inconsistencies in the testimony from the other individuals between the father's testimony about where the defendant was actually living at the time. No one seemed to be clear as to whether or not he lived with the victims or did not live with the victims. If he was living in a home that had no heat and no air conditioning, or if he was living in the home that Diamond said he was living in and all three girls testified that he was living in. Father's testimony and the pastor's testimony about where the son actually was when these allegations came out. Was he in town, or was he sent to Boston immediately after these allegations were made? Just several inconsistencies about what occurred in this situation that led the people to believe, and the jury in this case, that people were covering for the defendant. It was witnessed during one of the pre-trial or status hearings where the victims were present in court. It didn't have to be, they weren't giving any testimony. They were present in front of their abuser, and when they left the courtroom, they were reprimanded by their father. Ms. Pastros, a victim advocate, witnessed this, reprimanding the girls, saying that you should, this is what happens when you don't talk to me before you talk to other people. The detective Verduri, I apologize for mispronunciation of his name, also got information from one of the triplets that said her father informed her it was her duty to free the defendant, to free her brother. Coupled with these inconsistencies, we have these videotaped interviews that truly show what happened to these young ladies, unfortunately, by their defendant brother. So that's why we believe that the evidence was sufficient to convict the defendant. In regards... Yeah, that's the first issue. Yes. You've got the common standard that the state usually does going forward. But that being as it may, we have some other issues here that can change the outcome of this particular trial. Absolutely. And as it relates to the second issue, the Zaire issue, the people concede that there was error and that the trial judge did not state all four principles to the veneer group. But the defendant forfeited this issue by not preserving it. Well, we know that. If we move on, it's plain error. Right, it's plain error. But is it reversible error? Absolutely not. Why not? Because the evidence is not closely balanced in this matter. That's the crux of a lot of this case. Absolutely. Because so many issues were forfeited and they're being brought to this court for the first time. But this is the only case where there was error by the court with giving... with admonishing the veneer group. But that's reversible error under the first prong analysis. Absolutely, but there is... If it's closely balanced. Right, but we're arguing that it's not closely balanced. So tell us why it's not. Because the evidence was sufficient to prove that the defendant was beyond a reasonable doubt guilty of sexually assaulting his sisters. Based on the pre-trial testimony of both all three triplets and Diamond and Ms. Lindquist who interviewed the girls, there was no leading. The girls were essentially not coached. They were given the opportunity to express what happened to them. Now the fact that they later recanted their statements, recantations are inherently unreliable. Especially when the victims are faced with the possibility of placing their brother in jail and they've been told that it is their duty to free him. And it should also be noted that Diamond is one of the children that does not live in the household anymore because she was abused by her father. This is how this whole thing was kicked off. She was beaten by her brother and father and that's how DCFS even became involved in this case. So her reason... There is no reason for her to lie or to make up this information. We're coming down to a credibility contest and the struggle we're asking for is that this is not a case where there is some third party or independent evidence of this occurring. We have Diamond's account which in the first set of interviews with the triplets is the account on which the charges are based and then they come and say this didn't happen and so now we have a who do you believe but where can we look to find that it's not closely balanced? To have something independent or something that corroborates makes it more likely not just based on credibility. When we look at the inconsistencies in the actual testimony given by the girls and other individuals simple things like did you speak to a police officer the day that you were seen by a doctor in Joliet? No, that didn't happen. And then when you're impeached about the information oh yes, that did happen. You're acknowledging through the impeachment that that in fact did happen. I didn't tell Diamond this and then you're impeached about it and we find that you acknowledge that well actually I did. So it was those kind of inconsistencies where sometimes things happen, one triplet is saying yes and the other one is saying no but when they get impeached they're acknowledging the truth in the end. You can discuss their initial statements but once they're impeached with the information they don't continue denying what they're being impeached about, if you will. How do we know that's the truth? You say there's an interesting thing, I'm just curious, when you're impeached you're saying they went further than just letting the jury hear an impeachment that the jury's heard their testimony it didn't happen, then the jury is presented with statements by them that it did happen. What you're saying is they went the next step and said oh that's right, it did happen is what you're saying, right? Right, simple details that oh yes, that is correct, I did meet with an officer that day and it's corroborated by the officer's testimony that I did meet with this child and this child did tell me this and I think it comes down to the defendant's being scared I'm sorry, the victim's being scared coming into court against your brother cannot be an easy thing and when you are being prompted and in a sense forced to lie to save the family that's a huge imposition for a child but ultimately when it comes down to other issues like the Confrontation Clause issue for Issue 3 there was no violation of the Confrontation Clause the victim's statements that were admitted did not violate the defendant's right to confront his accusers the victims were all present, available for cross-examination there's nothing to state that his Confrontation Clause or his right to confront his accusers was in any way violated in this matter as long as the declarant appears for cross-examination at trial and answers the questions asked by defense counsel Confrontation Clause places no constraints at all on the use of these prior testimonial statements further the trial judge properly granted the request to view the victim-sensitive interview statements during deliberations without providing statements without providing a copy of the transcripts for the jury the request was made to see the video normal request as the trial judge stated they were allowed to see the video the trial judge said if you would like to see the transcripts after you've viewed the video I can do that, just please let me know and then they rescinded their request at that point, I'm not sure what the trial judge is supposed to do if he's supposed to keep the jury indefinitely until we get transcripts if they're no longer requesting them I think that's unreasonable the request was made, it was granted it was a reasonable request there is no violation there and defense counsel objected to providing transcripts and testimony to the jury and now argues that not providing it was improper so we find it's our position that there was no error there yes so the issue wasn't preserved, it was forfeited and then on the doctrine of invited error he asked for no transcripts to be provided additionally under issue 7, there was no cumulative error the only error was the Zare issue which the people admit that there was an error there but in no way was that reversible error and for cumulative error to be granted there has to be multiple errors that occurred and it's our position that that was the only error that occurred and it's not reversible error because the evidence was not closely balanced if there are no further questions we ask that this court affirm the defendant's conviction thank you counsel you may reply thank you your honor with respect to the deliberations issue, issue 5 I submit that what the judge should have done is she should have either told the jury you don't get to see either one or told the jury, okay that's fine it'll take a little while for the transcripts to be prepared once they're prepared, we'll give you the transcripts and you can also see the videotape that would be balanced what happened here was unbalanced because the jury was allowed to see the videotape again the pretrial accusations, not allowed to see the transcripts the recantations and that's what the jury had to wage here now I don't think it was invited error I do agree counsel basically went along with it and the state's attorney went along with it everybody agreed yeah that's fine and I think counsel was remiss but I think ultimately the burden falls on the judge and highlighting the state's evidence is the problem that occurred here if the defendant submits in issue 5 just briefly a couple of comments on the evidence counsel talks about Dimond's testimony that she heard noises then confronted the girls the girls told her what was going on Dimond then told the parents who brought in the pastor and they had a big family meeting and that's true as far as it goes, Dimond also testified that another sister, her half sister Annette, apparently she and allegedly were in the same room at the same time when according to Dimond they heard noises coming from the triplets room, grunting noises or something, the door was locked but they confronted the girls the next day, Annette denied that with respect to the family meeting the father said that didn't happen the mother, and it's interesting the mother here in the household was the mother of the triplets but not Ricky's so you would think that her allegiances if she had allegiances among some and not others it would be more towards the triplets, in any event she said nothing happened, there was no family meeting the pastor testified and said there was no family meeting briefly with respect to Dimond saying she heard the noises according to one of the doctors testified that if these incidents occurred it would likely involve a great deal of pain one would think because the girls said that the pre-trial accusations things were happening repeatedly one would think there would have been outcries heard numerous times throughout the time in the household and that other people would have heard them and there was no other testimony that that happened, the last thing counsel certainly, well two things counsel accurately recites that there were inconsistencies in the testimony for instance the father dealing with the living arrangements and where the defendant was spending the evenings I would submit that those were fairly collateral points and again don't establish corroboration for one or the other and the same thing with the incident that the counsel correctly recites from the record where the advocate said that she was in court one day, pre-trial hearing apparently, and the father was there with the girls and later according to the advocate said something to them about this is what happens when you talk to other people you don't talk to me maybe he was trying to protect his son but that doesn't prove that his son actually did what he was charged with having done in this case so again the defendant submits there was no corroboration, evidence was extremely close and therefore if your honors find error in any of the issues 2 through 6 that that error should result in a new trial in the event your honors don't reverse operate. No further questions? Thank you counsel both for your arguments in this case. The case will be taken under advisement and written disposition shall issue.